Good morning everyone. Wow, you really look great. Happy spring. Okay, here we go. The first case of the day is Appeal 18-2885, City of Chicago v. William Barr. Hi. You've come alone? Look, they have friends. Hello. Good morning. Welcome. May it please the court. Through the conditions at issue here, the Department of Justice seeks to avoid giving law enforcement responsibilities to the federal government. The district court enjoyed the conditions and went further and not only enjoyed the conditions as applied to the grant issued to the plaintiff, Chicago, but also to other grantees not before the court. We're challenging both the merits and the scope of relief. I'd like to start with what the district court termed the compliance condition, which is the requirement that grant Forgive me, but I'd like to set your path with the question. Of course, Your Honor. Because you argue that you can have an unconstitutional statute, and even if it is not related to the Byrne JAG grant, on what authority do you argue that the executive can require conformance with a law that has been held unconstitutional? Because I have to tell you, when I read that, I was breathless. As you can tell, I'm never breathless. Your Honor, there are two parts to the question. To start with the question of whether it satisfies the statutory definition of applicable law, even if it were applied as a standalone provision, it might be unconstitutional. I The point here is that as a funding condition, in other words, as applied in the context in which it's being applied here, 1373 is constitutional because it's germane to the grant and because if either Congress or the executive branch had expressly said, here's what we want you to do as a condition of grant funding. For example, in Dole, the Supreme Court of Congress couldn't tell states that they had to make their drinking age 21. Congress could say, as a condition of receiving funds, you have to make your drinking age 21. And similarly here. And the point here is that 1373, if validly applied as a funding condition, first of all, that just takes away the argument that it's facially unconstitutional, can never constitutionally be applied. And so then you would just have the statutory question of whether Congress and don't forget, this hadn't already been struck down as unconstitutional. So when Congress enacted the provisions talking about applicable law, Congress was making clear what has been struck down. I mean, 1373 at the time the certification was required. It's not like the Supreme Court had already said Section 1373 is unconstitutional. And the question is whether in the face of that, we're still treating it as an applicable law. Congress plainly thought it was a statutory question is just whether, well, that's not anything unusual. I mean, I would hope that Congress always thinks that what they're enacting is agreed. But the point is that the Congress think what Congress have thought that when it said applicable law, that set of applicable laws would include 1373. And Congress plainly would have thought that because Congress enacted 1373 and Congress would have wanted entities to comply with it. And then the question is, well, is it unconstitutional to do that? Is it unconstitutional to say you have to comply with 1373 in order to get this grant? And plainly it isn't because even if you thought, and I hope to get to this later, but even if you thought 1373 standing alone, although it has no independent enforcement mechanism, even if you thought 1373 as a standalone statute might pose a constitutional concern as applied in this case under Dole, it's constitutional. And so then... This is circular thinking. Your Honor, I disagree. It's not circular. The point is simply Congress can do more when it's imposing funding conditions than it can do as standalone statutes. If there were some other provision of the Constitution other than commandeering that were at issue, that might not be true. But in this circumstance, certainly if Congress had said we want entities to comply with the words of 1373, if Congress had put it that way, then the question of whether you could make them comply outside the context of a grant condition would just not come up at all. It would be totally clear because it doesn't matter whether you could do it as an 1373 can be applied in many different ways. It doesn't have its own enforcement mechanism. But what Congress has said through 1373 and through the statute at issue here is that it wants it to be a grant condition for this grant. If that application is constitutional, which we submit that it is, then there's no need to reach any further standalone independent constitutional question. Isn't the language of 1373 so broad as to prevent state and local governments from even placing restrictions on the amount of time spent during a workday, on the information, the immigration information that you request? I mean, if the federal government can co-opt the workday of state employees, how could that fail to be a violation of the anti-commandeering doctrine? I am so worried about the separation of powers that I dream about it every night. I mean it. Your Honor, two responses to that. First, just on construing 1373, it wouldn't be construed if the state says here's what we want you to spend your time doing and it doesn't include carving out a lot of time to talk to ICE. We don't think that's the sort of thing that Congress meant by 1373. But if you thought 1373 was unconstitutional as applied in some circumstance, then that might give rise to an as applied challenge that wouldn't say not only is it unconstitutional on its face as a standalone statute, but also that it can't be applied as a funding condition. And just to be clear what we're talking about here, we're talking about the issue that's arisen is that when the state is exercising, and this goes into the constitutionality as a standalone statute also, when the state is enforcing its criminal laws and takes somebody into custody, then the state doesn't want, not the state, the locality, has a policy that if the federal government also has an interest in the same alien that Chicago has taken into custody because Congress has directed the federal government or authorized the federal government to take that alien into detention at the end of the period of local confinement. In those circumstances, when the federal government issues a request and says, can you please let us know when this person is going to be released so that we can carry out federal law, then the state has a, the locality has a policy in some circumstances of saying no, we don't want to tell you. And the idea that when a local scheme, criminal enforcement, and a federal scheme of immigration enforcement overlap in that manner, and the locality can't carry out its own scheme in a far cry from anything that's ever been held to be commandeering by the Supreme Court in Murphy or in New York or in Prince, those were all circumstances where a state said, we don't want to get involved in this at all. We're not doing anything. We don't want to do anything. And you're making us, ourselves, regulate somebody or ourselves do something. And so we submit as a constitutional matter that section 1373, even standing on its own, is constitutional. But we also urge that you don't have to get that far in this case, because there's nothing unconstitutional about applying 1373 as a grant condition, which is what is being done here. And it would be strange to say that a statute that can be validly applied in the case before the court is facially unconstitutional such that it can't be applied in that circumstance. If anything's circular, it's that, not what we're saying. If there's a warrant for an arrest when someone is picked up for speeding or something, rather, I assume the welcoming city or whatever would cooperate. Is that correct? My understanding is if there is, I'm not sure what you mean by a warrant. When something comes up and a person is wanted for some crime. If they're wanted for a crime, my understanding is they would. But what they've said is that if there's a warrant for their detention under the immigration scheme, that's when they don't want to cooperate, Your Honor. Okay, well I'm trying to make that distinction, that's all. I think when we look at this thing in a big picture, they call themselves a welcoming city. They don't even use the other term, sanctuary, I guess. But in the event, that's what we have here. We have a situation where the city is not going to cooperate unless, except under more restrictive circumstances. We've been through this once before, so I have my own view on it, but there is a point where You have to keep an open mind. You have to keep an open mind. You know, that's hard. Especially at 8.30 in the morning. But anyway, we've been through this before. Let's adjourn. We'll come back at 10. If there are more questions about the compliance condition, I'm happy to entertain them. I do want to touch on the other issues before I sit down. Of course. On the notice and access conditions, I know this is ground. It's over with. This Court has been through before. Please. If you'd like me to just turn to the scope of the injunction, I can do that now, Your Honor. I think you should. The remedy that Chicago seeks is admittedly not necessary to provide complete relief to Chicago. If Chicago doesn't have these conditions on Chicago's grant, then Chicago has gotten everything that it needs. The question here is whether Chicago should be able, without certifying the class, to litigate and get a judgment in favor of other jurisdictions all over the country. Setting aside the question as to whether injunctive relief that extends beyond the particular plaintiff is appropriate, isn't nationwide relief necessary in order for the City of Chicago itself to receive the proper grant? Isn't the statutory structure clear that funds not allocated because one entity fails to conform or comply are redistributed to the other grant recipients? Two points on that. First, and I think first and foremost, Chicago is not urging that it's going to get more money because there's an injunction that applies to Sacramento or Salt Lake City or whoever. Chicago is not making that argument and couldn't. At most, the argument would be that Chicago, if those entities had the conditions applied to them and decided not to take their money, which is all speculative, then Chicago would say, if there's an injunction that applies to them, we'll get less money because we would get more money if you applied the condition. You don't generally have standing to say we want to get less money than we would otherwise get. Second of all, as a statutory matter, and this is a subsidiary point, the statute talks about what happens if a state doesn't take its grant and how it gets redistributed to localities. The statute doesn't specifically address the reallocation in the event that you don't comply with the condition or refuse the money. That's something that would have to be worked out in the particular circumstance. But the fundamental point is this. If Chicago is saying, Chicago is not arguing, as I understand it, and couldn't argue, that in order to get their grant, they need the conditions not to be applied to some other jurisdiction. But the asymmetry of this is key because, of course, if Chicago lost, those other jurisdictions could come in and file their own lawsuits, and they wouldn't be bound, and they could take another crack at it. Whereas, under the circumstances we have here, if Chicago wins, then it gets relief for everybody. And that's our fundamental equitable point, and there's just no answer to that. There's no reason that the way litigation should work is that if you win, you win for everybody, but if you lose, you only lose for yourself. And then on the Article III point, this court addressed this squarely in McKenzie. This court said that the plaintiff there did not have standing to seek relief beyond what was needed to obtain complete relief for the plaintiff before the court. And the court said, why else would you bother with class actions? The court made these points, this court, in binding precedent in McKenzie. And the Article III point also was underscored by the Supreme Court's decision in Gill recently, which said you have to be aware, caution the district court in that case, you have to be aware standing isn't dispensed in gross. The remedy needs to be tailored to remedy the plaintiff's injury. And the plaintiff's injury here, asserted injury, is that it wants to continue to enforce its welcoming city ordinance, and it wants to receive its grant. You see, our relief should ensure that Chicago gets the grant amount it would be entitled to, but for the unconstitutional conditions. And the only way to do that is to enjoin it nationwide, it seems to me, so that all grant funding is calculated without those conditions, given the interrelated nature of the funding. Well, Your Honor, first of all, the grant amounts have been calculated, and Chicago has been allocated its share. And the question is whether it has to comply with these conditions. In your brief, you characterize that as a windfall for Chicago. Well, no, the hypothetical is, suppose that there's some other entity that has the conditions applied to them, either doesn't file a lawsuit or files a lawsuit and loses, and then decides they don't want the money because of the conditions, and therefore they give the money back, and whether some of that money would indirectly flow to Chicago. It's unclear whether that would happen, but if it did happen, yes, that would be a windfall for Chicago. But that would be a windfall because the conditions were applied, not because there was an injunction. There is no argument that Chicago will get more money because of what happens to somebody else. And the fact that something may indirectly benefit you isn't a reason that you have to get an injunction to prevent something from indirectly benefiting you. I mean, there's no Article III principle that says if you might get more money because something happens to somebody else, you can sue on their behalf. You know, there have been numerous determinations by numerous courts that the conditions are unconstitutional. But thus far, the executive branch appears unmoved by those judicial determinations. I mean, is there any point at which the Attorney General's Office will accede to those determinations and end this nationwide? Or must every local government sue separately, regardless of how small their grant and how great the cost of litigation? Camden, New Jersey? Cherry Hill, New Jersey? San Jose, California? I mean, where does this end, do you think? How possible? Your Honor, just first to be clear, the holdings aren't that the conditions are unconstitutional, but just that they violate the statute. I'd just like to make clear that distinction. In terms of, obviously, there's a longstanding principle that the executive can acquiesce to decisions that are made by courts, or it can choose not to acquiesce and keep litigating. And at some point, if the authorities stack up against the executive branch and the executive branch determines not to seek further review, then the executive branch may revisit its policies. But what's happening here, what the district court's ruling here does is says, no, you can't do non-acquiescence. That whole doctrine that has grown up over the years doesn't apply because the first district court anywhere that says that it's invalid issues a nationwide injunction, and then the executive branch has to take that very case to the Supreme Court or is stuck with it. And that's not the way that this has ever worked in any litigation about administrative action. I do want to reserve time for rebuttal, but I'll take a lot of questions first. I know you do, but I'm going to ask you to think about something while you're sitting there, if you'd be so kind. And it's at page 17 of the city's brief. There is a sentence that seems to me to encapsulate the situation here, and I will quote it. This court can avoid addressing Section 1373's constitutionality by rejecting the Attorney General's limitless, limitless reading of Section 101-53-A5D. Do you need a pencil? No, I'm following you, Your Honor. Under which he may turn any, and I repeat any, provision in the U.S. Code into a grant condition no matter how far afield from the JAG program, the JAG program, and regardless of whether the law is even constitutional as a standalone provision. And I know you're into your rebuttal, so maybe when you come back. I'm happy to address it now or when I come back, whichever you prefer. You're going to have to keep to strict limits today. Okay, I can do that on rebuttal then, Your Honor. Thank you. Okay, thank you. May it please the Court. Good morning. Despite the Attorney General's repeated insistence. Do you want to say your name for the record? Oh, Benna Solomon, for the city of Chicago. I know who you are, Benna. Despite the Attorney General's repeated insistence that Chicago's adherence to its welcoming city policies interferes with the federal government's enforcement of the immigration laws, this Court aptly recognized in the prior appeal that the only conduct at issue here is the refusal of local law enforcement to aid in that enforcement. The District Court correctly ruled that Chicago has the right, under the Tenth Amendment, to pursue its own proven policies that encourage a cooperative relationship between police and all residents, regardless of immigration status, and to limit the use of city funds and city employees' time to city priorities. This morning, I will explain that the compliance condition is unauthorized by statute, and if the Court reaches the issue, invalid as well, because it rests on a statute that is unconstitutional. What? Oh, go ahead. Finish. I was going to turn to the injunction issues after the merits. What other applicable federal laws could the legislators be referring to when using that term in Section 10153? Is it meant to reference other federal laws as to that grant, anti-discrimination laws, or something else? How can we determine its scope? We determine it from the context and the other words that it's paired with. It's paired with the preceding provision that the applicant is required to comply with all provisions of this part and all other applicable federal laws. So in that context, applicable takes its meaning from that pairing of the words, and it means, for that reason, grant laws, laws related to giving out grants, laws related to implementing grants, laws related to grant recipients, and you know, this is precisely the holding of the Third Circuit. The Third Circuit did not reach the constitutional issue whether 1373 is commandeering. It identified five reasons why it felt that the statutory reading was compelled in favor of Philadelphia, would be similarly compelled in our favor. Applicable in context means all other applicable federal laws in the grant context, and that reading gives meaning to every word in the statute. It avoids the constitutional issues of commandeering. It avoids ambiguities, and it avoids a conflict in the circuits. The Attorney General actually does not adhere to his boundless reading of applicable that I believe was advanced in the opening brief. In the reply brief, the Attorney General attempts to salvage that impossibly broad reading by admitting that it does not, in fact, include every provision of the U.S. Code, but only those that are germane and impose a preexisting obligation. But there is simply no reasonable basis to interpret the word applicable to mean more than just the grant-related statutes, which we have submitted here and the Third Circuit concluded as well, and something less than everything in the U.S. Code. Among other problems, that interpretation gives the Attorney General too much discretion to administer this formula grant, which Congress provided to state and local governments based on population and crime statistics and not grantees' local political choices. So would I be correct if I thought what you are saying is that the terms other and applicable are limiting, in that it does not state it must certify compliance with all federal laws? Yes, Your Honor. And again, among other reasons, all federal law, reading it to me in all federal law, simply reads out two very important words of the statute, and that's among the reasons the Third Circuit rejected that interpretation. And that basically the Attorney General reads all other applicable federal law as a door opening up anything in the federal statutes as fair game and could require recipients to certify compliance with any federal law, regardless of that law's connection to law enforcement or to a grant. And that, in a nutshell, is what you are saying? We certainly read the opening brief the same way Your Honor apparently read it. I think the reply brief reflects an understanding that that is completely unreasonable. At pages 3 and, again, at pages 5 and 6, the Attorney General attempts to offer a more limited reading of all other applicable federal laws, but those readings are equally unreasonable. And in particular, the reliance on preexisting obligations is simply circular, as Your Honor recognized in the topside argument. Applicable federal law cannot include Section 1373 because that provision is unconstitutional, and therefore it is not fairly regarded as applicable federal law at all. And, again, we are not urging the Court to jump ahead and reach the constitutional issue, but if the Court does not accept a narrower statutory reading, as we have advanced and the Third Circuit accepted, the constitutional issue would be presented. Now, as we understand the Attorney General... I mean, I take it that, bottom line, your view would be, or would it? Maybe not. That it's unconstitutional under the anti-commandeering statute. It absolutely is. That is absolutely our view. We also challenged it on its face in the District Court, and the District Court enjoined it on its face. And counsel's argument this morning, and as I understand the Attorney General's argument... I wanted you to ask to respond. Well, the argument is that Section 1373 is valid as a funding condition, and therefore it can be applied here as a funding condition, even if it could not be applied on a stand-alone basis. But that argument overlooks that Congress did not write Section 1373 as a funding condition. It is direct regulation of state and local government officials, and all you need to do is look at the words of the statute to see that. It cannot be sustained as a grant condition because it isn't a grant condition, and it can't be sustained on the theory that it is valid in some circumstances, namely as a funding condition, when it is facially unconstitutional as written. This case does not involve compliance condition as a funding condition directly. Congress did not make it a funding condition. Congress attempted to enact direct regulation of state and local governments and their officials. It wrote it as a prohibition on a prohibition, I suppose thinking that pre-Murphy that would avoid commandeering. We now know that it does not. It is commandeering even on its own terms. But my point is that it is not written as a funding condition, and it cannot be sustained as a funding condition. And because it is unconstitutional as written, namely as direct regulation, it cannot be an applicable federal law. Unconstitutional laws are not federal law at all, much less applicable federal law. Repealed laws are not federal law. So under the anti-commandeering doctrine, Section 1373 is unconstitutional. I have been trying really very hard to wrap my head around the argument that even if the statute is unconstitutional, it's still false within the category of other applicable federal law. And the Attorney General's argument that it can still demand compliance with unconstitutional law. I mean, I have never heard such an assertion, not in the United States of America. Who knows elsewhere? Well, it requires the dance maneuver that, you know, well, maybe it could be constitutional as a funding condition. And since the Attorney General is attempting to use it as a funding condition, then it's constitutional as a funding condition. But it's not a funding condition. You can read the words all day long. You're not going to find any reference to grants or grantees or money or anything else. It is a square prohibition on the exercise of power by state and local governments. It is inconsistent with all of the purposes of the anti-commandeering doctrine. It blurs the line between local and federal policy and personnel. It makes it difficult for the public to properly assign responsibility for governmental actions. It expands the power of the federal government with additional personnel, and it shifts the cost of that to local governments. Your question, how much time could employees spend on the federal government's business, is one of our concerns. There are no limits in this statute. Now, the Attorney General offers a number of attempts to salvage Section 1373, even against the commandeering doctrine. But to be clear, Section 1373 does not regulate private actors, nor does it regulate private actors and state actors even-handedly. Again, under the plain text of the statute, it regulates only governments. And for that reason, it is not properly regarded as a preemption question. You can't preempt a refusal to help. When you say you're preempting a refusal to help, what you mean is that you are commandeering state and local government officials. And so... Would it remove the policymaking authority from government officials and give it to each individual working within those state and local governments? It does. And the District Court made an express finding to that effect. It was one of the reasons the District Court relied on. It is within the power of state and local governments only to identify their policymakers and assign who should make policy. We don't empower police officers to make policy for the city of Chicago, and for good reason. That the Attorney General lacks authority to impose the conditions should be the end of him. And I want to make clear, they don't simply violate the statute, as counsel claimed this morning. The arrogation of executive power violates the Constitution. It violates the separation of powers between the executive and legislative branch, and it violates the Tenth Amendment as well. So we're not dealing with a statutory violation. We are dealing with many constitutional violations. The Attorney General nevertheless argues that the injunction should be limited to Chicago so that he can impose his unlawful conditions on hundreds of other governments around the nation. This court can affirm the injunction under the APA along the Administrative Procedures Act. Let me ask you this and then continue. But how many other courts have considered the constitutionality of these conditions? And how many have found them unconstitutional? Has any court held otherwise as the constitutionality? On constitutionality, no court has upheld the conditions, Your Honor. At this point, we're up to seven courts, five district courts, and two courts of appeals to address some aspect of the conditions. The Third Circuit did not reach the commandeering issue. But again, as I say, the excessive conditions, even as a matter of the Bernjag statute, violate the constitution because they're ultra-various. The Attorney General simply lacks the power under the constitution to make up grand conditions on his own. We sought relief in this case under the Administrative Procedure Act, and the district court found a final agency decision. The APA provides that courts shall hold unlawful and set aside agency action that is unlawful, unconstitutional, or unauthorized. And that is, to quote the D.C. Circuit, the ordinary result when agency rules are unlawful. The district court here determined that the final agency decision was the program-wide decision to impose the three JAG conditions. The Attorney General does not contest that ruling. Upon determining that the conditions were unlawful, the district court was authorized under the Administrative Procedure Act to set that decision aside. Now, as I understand the Attorney General's arguments on the APA, he makes essentially three responses. The first is that the APA does not require complete invalidation, that courts are not compelled to issue that relief, there should not be automatic nationwide effect, and that actually addresses neither our submission nor the district court's decision here. Our point is simply that the APA authorizes this relief, and the district court has discretion to award it. The Attorney General's position amounts to an argument that the relief provision of the APA is unconstitutional. The Attorney General also attempts to marginalize the large number of APA cases that we cite as, quote, in large measure reflecting the venue rules of the D.C. Circuit. But that ignores the owners and operators case from this court and several cases from the Ninth Circuit, as well as the view of every member of the Supreme Court in the Lujan case. And third, he insists that under the APA, as under Article III and Principles of Equity, injunctive relief should be tailored to the plaintiff's injury. His argument on all three of these points is essentially the same, that there is a complete bar to program-wide injunctions. And I want to point out at the outset that he does not argue on any of these three grounds that the particular way that the district court exercised its discretion in this case was an abuse of discretion. So if, as we urge, this court discards the categorical bar, the idea that Article III courts lack power in every case to enjoin a facially unconstitutional statute on its face, to issue program-wide relief under the APA, and the idea that equity can never enter a facial injunction, if the court rejects those broad categorical grounds, then the injunction in this case would need to be affirmed. There simply is no argument concerning abuse of discretion. Is there some limit, in your view, of issuing something nationwide? Yes, Your Honor, there are many limits. And the district court here went through them at great length. It is not the default rule. It is appropriate in a very narrow group of cases where there is flagrant unconstitutionality. There is a single nationwide program that ought, in fairness, to be applied consistently across the nation. And a balance of equities. The district court expressly found no harm to the Attorney General in being unable to apply conditions that have never applied before to state and local governments, with the exception of one year on the compliance condition only. These are new conditions, and the district court expressly found no harm to the Attorney General and irreparable harm to state and local governments because of the severe impact on the trust in our communities. Those factual findings are not challenged here. In fact, there is no argument of any kind that the district court abused its discretion other than by issuing the broad injunction which the Attorney General believes is inappropriate under the APA, despite the clear statutory language under Article III, despite the absence of any case ever accepting that argument, and despite the fact that courts sitting in equity have done this basically forever. So let me turn to the few things that the counsel did indicate this morning. He cites two cases on Article III, and those are McKenzie and Gill. McKenzie, from this court, is very different, and we explain this in our brief. In that case, the court found that the plaintiffs themselves did not need injunctive relief because simply by filing to stop the demolition of their properties, they obtained the same relief that they would have obtained from the injunction. So the injunction in that case would have helped only absent parties. That is not this case. In Gill, it's very similar. In Gill, the plaintiffs sought an injunction against the statewide redistricting, but redistricting is a claim that has to be brought on a district-by-district basis, and for districts where there was no plaintiff, there simply was no standing. Again, we have challenged a program-wide decision to apply three unconstitutional conditions to the JAG program. We have challenged one program. The district court has found that one program is unconstitutional, and the district court set aside that one program. The district court did not enter an injunction in favor of local governments around the country. The district court entered an injunction in favor of Chicago and against the only defendant in the case. The fact that that injunction benefits others who are not before the court is a commonplace. Is a what? A commonplace, Your Honor. It happens all the time. Whenever a statute is invalidated on its face, that ruling naturally benefits others before the court. We cite a very long list of these cases on page 47 of our brief, and there just simply is no case accepting the idea that to uphold an injunction in precisely the terms authorized by the APA and previously issued in countless facial challenges is nonetheless outside the jurisdiction of the federal courts under Article III. In the prior appeal, Judge Mannion, I know you expressed some concerns that the injunction was similar in effect to non-mutual collateral estoppel. And if I could, I'd just like to take a minute to try to address that to change your mind, as it were. With respect, collateral estoppel is different in at least two ways. First, after a party loses on the merits, the application of collateral estoppel is not discretionary. And here the district court explained at great lengths the reasons that it was exercising its discretion to issue the nationwide, the program-wide injunction. That was a discretionary ruling, not an automatic ruling, as follows from the application of collateral estoppel. And second, collateral estoppel prevents relitigation of the same issue in any context. The injunction does not do that. The attorney general has remained free to relitigate the same issues and has done so all around the country. There are numerous of these cases pending. And it has done so not only for the fiscal year 17 grants, but for the fiscal year 18 grants as well. The attorney general has reimposed the same conditions on the city of Chicago for fiscal year 18, despite the injunction that even he does not challenge in favor of Chicago itself. So the injunction has not stopped the attorney general to the result on the merits of this case. And even accepting that a program-wide injunction might limit percolation to some extent, which we agree it might, the district court here expressly considered that and it exercised its discretion to balance that cost, as it were, against other considerations. That ruling, as I indicated, is not challenged as an abuse of discretion. And on that point, the D.C. Circuit's decision in the national mining case, which we cite in our brief, is very instructive, and I commend it to the court. The court there expressly addresses the relationship between what it called a nationwide injunction in the administrative context and Mendoza, and it observes that percolation is not the only value in litigation with national impact. The Supreme Court itself in Califano against Yamasaki discussed both that issue and the corollary, the increased pressure on the court to take a case. Now, that case concerned a nationwide class action, so the same concerns that, you know, counsel thinks are presented here, they could be presented in the class case as well, but the Supreme Court again says that, you know, percolation and the federal government's ability to, you know, litigate all around the country, they're simply not the only values. Well, in his opinion since in the district court, it seemed to make an effort to confine things to Chicago. The district court granted the same program-wide relief, but in deference to this court's earlier stay of the program-wide relief, it immediately stayed it. So it was entered as a program-wide injunction, although it was stayed. The district court did not alter its view that program-wide relief was appropriate as an exercise of discretion in this case. The conditions here, as I indicated, have been litigated to preliminary or permanent judgment in seven courts, and every single court has ruled that they are unlawful. There is nothing to be gained and a lot to be lost from requiring 1,000 burn-jag applicants to file suit over these same conditions, and we ask the judgment be affirmed. Thank you. Mr. Tanney. Thank you, Your Honor. I'd like to start where we left off with the question that you posed. We do agree that it's appropriate to reach the statutory question first, and therefore if the court concludes that it's not an applicable law for statutory reasons, that the court should stop there, and indeed we would point out that 1373 was challenged only insofar as it imposed a condition. If you look at the complaint on pages 39 and 40 of the appendix and then the prayer for relief on 45, so there's no basis for, if you agree with them about applicable law without getting to the constitutional question, there's no basis for going further and striking down 1373, and so we would ask if the court agrees with them. We don't, but if the court agrees with them about that, that the constitutional ruling should go away. The district court did issue that ruling, but we would like it to be vacated if this court doesn't reach the question. In other words, then we wouldn't have to get into anti-commandeering, or is that what you're saying? That's correct, Your Honor. Now, of course, we think we're right about, we don't think that there's no statutory authority, and I can briefly explain why. I mean, their position is that applicable law means only grant laws, so they say that if there are laws that apply to the primary conduct of the grantee and restrict what the grantee can do, the grantee doesn't have to say they're complying with them. There's no basis for that in the statute. To the extent that there are laws that apply to this grantee that are germane to this program, we submit that they're applicable laws. It would be very surprising if Congress didn't want to say that if you're getting a federal grant, you have to comply with the laws that apply not only to grantees generally, but to your primary conduct. I want to address the point that was made about... I mean, the argument seems to be that if we acted in excess of our statutory authority, that's automatically unconstitutional. I would refer the court to the Dalton case cited in our brief, which said that every time that the executive branch acts outside its authority, that doesn't turn it into a constitutional problem. So this isn't a constitutional violation if you're on the statutory grounds. And finally, I want to turn to the Nationwide Injunction issue. There are a lot of Administrative Procedure Act cases where the agency either explicitly or implicitly acquiesces and says, if you rule against us, we're going to change it for everybody, and the issue isn't litigated. And they cite lots of cases in their brief, and we admit that that's a lot of times what happens. But the point here is not that the agency may choose, as an exercise of its discretion, once it gets one adverse judgment to change the rule for everybody, or that the agency may want to have a uniform rule. The point here is that in the cases where the issue was litigated, in the L.A. Haven Hospice in the Ninth Circuit, in Virginia Society in the Fourth Circuit, where the district court had issued a Nationwide Injunction under the APA saying a regulation was facially invalid, those courts reversed and said it was an abuse of discretion to do so. And those were APA cases. The Fourth Circuit explicitly said that the set-aside language that they're relying on here was inapposite. And the point is simply, in circumstances where the issue is contested, where the agency is saying, we do not intend to apply this ruling nationwide, we think you should limit the relief to the parties before the court, that's what courts have done. And that's the only reason there are ever non-equiessence cases, is that sometimes agencies get to do that. And then just to close, I want to just go back to McKenzie, because if you read McKenzie, there's a paragraph that talks about giving relief to third parties. It says there's no standing to seek relief on behalf of parties not before the court. It says, why would you bother with class actions? And then it says, so the district court doesn't have to... So a Nationwide Injunction is never appropriate. No, it does not say that. It says sometimes a Nationwide Injunction is necessary to provide complete relief to the parties before the court. And that's in the same paragraph of McKenzie. And it talks about desegregation cases or other cases where you need program-wide relief in order to give relief to somebody. So that paragraph ends. Then there's a new paragraph that says, and it turns out we don't need any injunction at all. And that's where the language that Chicago is citing comes from. It's from a new paragraph on a new topic about whether even these plaintiffs should get an injunction. And it says, in fact, even these plaintiffs don't deserve an injunction. That was not the basis for the holding that there was no standing to seek relief on behalf of other parties. That was not the basis for talking about why you should have to file a class action if you want to do that. This part of the opinion is not very long. It's all on page 555. If you just look at those two paragraphs, you'll see that this court has squarely held that you can't seek relief on behalf of non-parties and that otherwise there would be no point to class actions. I see my time is up. Thank you, Your Honor. Thanks to one and all. Thank you very much.